IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MOLD MEDICS LLC,

               *Plaintiff,*

    v.

ALL AMERICAN RESTORATION CORP.
and MICHAEL RUBINO,

               *Defendants.*

Civil Action No. 2:21-cv-1851

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

      Plaintiff Mold Medics LLC ("Mold Medics") commenced this trademark infringement lawsuit against Defendants All American Restoration Corp. ("AARC") and Michael Rubino ("Rubino") (collectively, "Defendants") on December 22, 2021. (ECF No. 1). Count I of Mold Medics' Complaint is a claim for "Federal Trademark Infringement Under § 32(1) of the Lanham Act (15 U.S.C. § 1141(1))," Count II is a claim for "Unfair Competition Under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a))," and, Count III is a claim for "Common Law Trademark Infringement and Unfair Competition." (ECF No. 1, pp. 4-6).

      Defendants filed a Motion to Dismiss or Transfer. (ECF No. 14). First, they seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)") arguing that the Court lacks personal jurisdiction over them. (ECF No. 15). In the alternative, they request a transfer of venue to the United States District Court for the District of New Jersey pursuant to Federal Rule of Civil Procedure 12(b)(3) ("Rule 12(b)(3)"). (*Id.*). Second, they contend Mold Medics has failed to adequately plead a claim upon which relief may be granted and dismissal is

appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  (*Id.*).  Upon request of the parties, the Court granted jurisdictional discovery, which commenced on February 15, 2022.  (ECF Nos. 17, 18 and 20).  On June 23, 2022, the parties notified the Court that jurisdictional discovery had concluded.  (ECF No. 30).  Briefing on Defendants' motion is now complete.[1]  For the following reasons, the Court will deny Defendants' motion in its entirety.

## I. STANDARD OF REVIEW

### A. Rule 12(b)(2)

Rule 12(b)(2) requires a court to dismiss a case when it lacks personal jurisdiction over a defendant.  FED. R. CIV. P. 12(b)(2).  A court must analyze jurisdictional contacts on a claim-by-claim basis.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 104 (3d Cir. 2004).  A defendant bears the initial burden of raising personal jurisdiction as a defense.  *See* FED. R. CIV. P. 12(h)(1).  When a defendant raises that defense, the burden shifts to a plaintiff to establish personal jurisdiction.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  If there is no evidentiary hearing, a plaintiff must make a *prima facie* case by furnishing facts that establish with reasonable particularity that personal jurisdiction exists.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)).  If a court holds an evidentiary hearing, the standard of proof elevates to a preponderance of the evidence standard.  *LaRose v. Sponco Mfg., Inc.*, 712 F. Supp. 455 (D.N.J. 1989); *see also Hufnagel v. Ciamacco*, 281 F.R.D. 238, 244 (W.D. Pa. 2012) (citing cases).  If a plaintiff meets his burden, then the burden shifts back to a defendant to present a compelling case that personal jurisdiction is unreasonable.  *Carteret Sav.*

---

[1] Seven days after the completion of briefing, on July 21, 2021, Michael Rubino filed his first Amended Counter-Claim against Mold Medics, LLC and Third-Party Complaint against Tim Swackhammer ("Swackhammer").  (ECF No. 41).  This prompted a Motion to Dismiss from Mold Medics and Swackhammer.  (ECF No. 43).  Briefing is set to conclude on September 9, 2022.  (ECF No. 46).

*Bank, FA v. Shushan*, 954 F.2d 141, 142 & n.1 (3d Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A plaintiff's case cannot merely rely on the pleadings but must be supported by sworn affidavits or other competent evidence. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984). All allegations made by a plaintiff are accepted as true and all disputed facts are construed in a plaintiff's favor. *Carteret*, 954 F.2d at 142 & n.1. To that end, any conflicts between the evidence submitted by a plaintiff and a defendant are construed in a plaintiff's favor. *In re Enter. Rent-A-Car Wage & Hour Empl.'t Practices Litig.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010). If a plaintiff initially fails to meet his burden but makes factual allegations suggesting that the requisite contacts exist, a court can order jurisdictional discovery to ameliorate the jurisdictional inquiry. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

## B. Rule 12(b)(3)

FED. R. CIV. P. 12(b)(3) is the proper vehicle for seeking a dismissal only when venue in the chosen forum is improper under the federal statutes, *see Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 55 (2013), although the Court retains the discretion to transfer, rather than dismiss, were it to find venue improper.[2] A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper. *See Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011). *See also Myers v. American Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982). In deciding a motion to dismiss

---

[2] If venue is inappropriate, a court may either dismiss the action or transfer it to the court which has appropriate venue. 28 U.S.C. § 1404; 28 U.S.C. § 1406. Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1404(a) provides for transferring a case in which both the original and the requested venue are proper. *Id.*

and/or transfer for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the pleadings. In "ruling on defendant's motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara,* 55 F.3d at 879.

### C. Rule 12(b)(6)

A motion to dismiss filed under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not

entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II. FACTUAL BACKGROUND[3]

Mold Medics LLC is a Pennsylvania corporation, with its principal place of business at 811 Washington Ave., Carnegie, PA 15106. (ECF No. 1, p. 1). It was organized in January of 2018. (ECF No. 5-1, p. 5). Mold Medics owns the mark "MOLD MEDICS" ("Mark") and registered the Mark on the principal trademark register of the United States Patent and Trademark Office ("USPTO") at USPTO Registration No. 5,886,631 on October 15, 2019. (ECF No. 1, p. 2). It uses the Mark in the operation of its business providing services, products, and solutions for mold remediation and other air quality and environmental issues. (*Id.* at p. 2). The Mark is also used under a license agreement with its affiliate for marketing, sale, management and operation of the franchise system for its businesses. Mold Medics uses the domain name *www.moldmedics.com.* (*Id.*).

In September of 2021, Mold Medics became aware that Defendants had begun to use the marks "The Mold Medic" and "Mold Medic" and the domain name *www.themoldmedic.com* ("Infringing Marks") in connection with the operation of a mold remediation and air and environmental quality business. Defendants are alleged to have established social media and marketing sites using Infringing Marks as well as publishing an infringing book titled, "The Mold Medic." (*Id.*). Mold Medics contends that Defendants' activities have caused customer confusion and disrupted Mold Medics' business.

---

[3] The Court's rendition of the facts is informed not only by Mold Medics' allegations in its Complaint, but the facts ascertained during jurisdictional discovery and submitted to the Court for review at ECF Nos. 36, 38, 39, 40-1, 40-2, 40-3, 40-4, 47-1, as well as ECF Nos. 15-1 and 15-2 and ECF No. 5-1.

AARC is a New Jersey corporation with its registered office and principal place of business at 1711 Ginesi Drive, Suite 3, Freehold, Monmouth County, NJ 07728. (ECF No. 1, p. 1). In addition, AARC has offices in Florida and California. (ECF No. 15-1). AARC does not maintain offices, employ workers, or own any property or assets in Pennsylvania. (*Id.*). It was incorporated in May 2017, advertising as "Certified Mold Remediators" and offering mold remediation, flood and fire damage, cleanup, basement waterproofing and yard drainage. Since January 2019, AARC has advertised that it is licensed in Connecticut, New Jersey, New York, and Pennsylvania. It maintains a home improvement contractor's license in Pennsylvania. In April of 2020, AARC advertised on its website that its services were available in Pennsylvania, and it provided a link for customers to "Book Now." (ECF No. 40-2, p. 15); (ECF No. 36).

Rubino, who is the President of AARC, is originally from New Jersey, but he has been domiciled in Florida since 2020. He does not have any personal assets, business assets, property, or agents in Pennsylvania. To the best of his knowledge, he has never even traveled within the Western District of Pennsylvania. He personally wrote and self-published a book in December 2020 titled *The Mold Medic: An Expert's Guide on Mold Removal*. He used the term "Mold Medic," online and in social media in connection with the promotion of his book because people had been referring to him that way since 2014. According to Rubino, his online and social media presence under the name "Mold Medic," and his book are not for the promotion or offering of mold remediation or air duct cleaning services. He claims his online and social media presence simply make information available about him and the work he does. To his knowledge, he has never directed any posts or Internet activities towards the Western District of Pennsylvania. (ECF No. 15-1). Rubino's book directed readers to contact him as follows, "If you ever have any question about mold, feel free to email me at *Michael@AllAmericanRestoration.com* or visit

our website at *www.AllAmericanRestoration.com*," and ten of thirteen testimonials in the book refer to AARC. (ECF No. 32, p. 5).

AARC began advertising Rubino's book on its website prior to its publication. It displayed a picture of the book as well as a link to pre-order the book. (ECF Nos. 36-7 and 36-8). After publication of the book, AARC began to advertise on its website as follows:

> We aren't just another remediation company, we wrote the book on it: The Mold Medic written by All American Restoration's President Michael Rubino, outlines the steps when you first begin to experience the adverse health reactions that can accompany mold exposure. Get expert advice on finding a good inspector, remediation company and doctor to help you on your journey to recovery.

(ECF Nos. 36-9 and 36-10). Meanwhile, Rubino, in January of 2021, created a website, *www.themoldmedic.com*; a Facebook page, @themoldmedic; an Instagram handle, themoldmedic; and, a Twitter handle, @themoldmedic. (ECF No. 5-1, pp. 10, 20-25); (ECF No. 36-12); (ECF No. 40-4, p. 10). On Rubino's website, it referred to him as, "The Mold Medic," and stated he was an authority on mold remediation and the President of AARC. His qualifications were cited, and readers were directed to *AllAmericanResoration.com* or *Michael@allamericanrestoration.com* to reach him.

In February 2021, AARC was still advertising Rubino's book on its website and announced it was available at Barnes & Noble. (ECF No. 36-11). On May 7, 2021, AARC filed an application to register the mark, "The Mold Medic," on the principal register of the United States Patent and Trademark Office seeking to register it in Class 40, mold remediation services. (ECF No. 5-1, p. 2). Then, in mid-August, on AARC's website, it launched a segment, "Mold Talks with The Mold Medic: Michael Rubino." (ECF Nos. 36-13 and 36-14). Two months later, the same segment appeared on Rubino's website, *www.themoldmedic.com*. (ECF No. 36-

15).  Now, the content on the two webpages is the same.  (ECF No. 32, p. 7); (ECF Nos. 36-15 and 36-16).

Rubino claims he has never performed services (mold remediation or air duct) for any clients in Pennsylvania.  (ECF No. 40-1, pp. 5, 8-10); (ECF No. 40-3, p. 17).  Since July 2018, a total of 364 people have filled out a form on *themoldmedic.com* website (Rubino's website) to inquire about a consultation, which costs $249.  A person with a Pennsylvania area code associated with her phone number received a consultation, but she and her property are actually located in Las Vegas, Nevada.  (ECF No. 40-3, p. 19); (ECF No. 40-4, p. 8).

When a person contacts AARC, consultations are provided over the phone or other remote means.  It is only when a person schedules a consultation that they provide address information.  If a person requests information, AARC will send a proposal.  (ECF No. 40-2, p. 6); (ECF No. 40-3, p. 8).  Thus, unless a person specifies so, AARC does not know where a person is located.  (ECF No. 40-3, p. 9).  AARC has contacted and communicated with at least 58 prospects in Pennsylvania since November 19, 2020.  (ECF Nos. 36-19, 36-22, 47-1).  Mold Medics contends at least eight "prospects and customers" "came directly by use of the Mold Medic mark and brand since June 2021, at least three of which were also prospects of Mold Medics."  (ECF No. 32, p. 14).  AARC has received $293,674.18 from services it performed in Pennsylvania since July 18, 2018.  (ECF No. 40-2, pp. 9-10).  AARC has never partnered with any consultants in Pennsylvania, and out of the 2,600 leads per year it receives nationwide, it claims that less than 1% are from Pennsylvania.  (ECF No. 40-2, p. 13).

### III. ANALYSIS

**A.  The Rule 12(b)(2) motion will be denied.**

Under FED. R. CIV. P. 4(e), the law of the forum in which a federal district court sits controls the analysis of personal jurisdiction under its long-arm statute.[4]   The Court sits in Pennsylvania, therefore, Pennsylvania law controls.  The boundaries imposed by Pennsylvania's long-arm statute on personal jurisdiction are coextensive with those imposed by the Fourteenth Amendment. 42 Pa.C.S.A. § 5322; *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir.  1996); *Kenneth H. Oaks, Ltd. v. Josephson*, 568 A.2d 215 (Pa. Super. 1989) (citation omitted).   A federal court sitting in diversity in Pennsylvania must therefore look to federal jurisprudence to determine whether a defendant is subject to personal jurisdiction. *Vetrotex*, 75 F.3d at 150.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution only authorizes a court to exercise personal jurisdiction if a defendant purposefully established minimum contacts that have a substantial connection with the forum.  U.S. CONST. amend XIV; *Burger King Corp.*, 471 U.S. at 475 (citing cases); *Int'l Shoe Co. v. State of Wash., Off. of Unemp't Comp. & Placement*, 326 U.S. 310, 319 (1945).  Courts apply this rule of law using a two-prong test: 1) whether a defendant has sufficient contacts with the forum (the contacts prong); and 2) whether the exercise of jurisdiction would be reasonable under the circumstances (the reasonableness prong). *Daimler*, 571 U.S. at 144.  The minimum contacts requirement may be met through either of two theories of personal jurisdiction:  general or specific.  General

---

[4] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)) (internal quotation marks omitted).  "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Id.* (quoting FED. R. CIV. P. 4(k)(1)(A)).

jurisdiction arises from a defendant's non-forum related activities, while specific jurisdiction arises from a defendant's forum-related activities. *Helicopteros Nacionales de Colombia,* 466 U.S. 408, 414 & nn.8–9 (1984); *Vetrotex* 75 F.3d 147 at 151 (citation omitted).

General jurisdiction extends to all claims against a defendant and exists where a company is "essentially at home." *Ford Motor Co. v. Montana Eighth Judicial District Court,* __ U.S. __, 141 S. Ct. 1017, 1024 (2021). Mold Medics does not argue that general jurisdiction over Defendants is present in this case. Rather, it contends that the Court has specific personal jurisdiction over both Defendants. (ECF No. 32). Because Mold Medics has conceded that general jurisdiction is not present, the only question before the Court is whether it can exercise specific personal jurisdiction over Defendants. The Court holds that it can.

Specific personal jurisdiction was founded on "an idea of reciprocity" between a defendant and the forum. *Ford Motor Co.*, 141 S. Ct. at 1025. Put similarly, "[w]hen (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoying the benefits and protections of its laws'—the State may hold the company to account for related misconduct." *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 319). A defendant should be provided with "fair warning," which means "knowledge that 'a particular activity may subject it to the jurisdiction of a foreign sovereign.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 472). "The law of specific jurisdiction . . . seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.* (citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017)). The United States Court of Appeals for the Third Circuit has set forth the following test for specific jurisdiction: (1) the defendant must have purposefully directed its activities at the forum; (2) the litigation must arise out of or relate to at least one of those activities; and, (3) the exercise of jurisdiction comports

with fair play and substantial justice. *O'Connor*, 496 F.3d at 317 (citations omitted). The Court finds that Mold Medics has made a *prima facie* case by furnishing facts that establish with reasonable particularity that specific personal jurisdiction exists over Defendants.

### 1. Purposeful Availment

Turning to the first requirement of specific personal jurisdiction, the Court must be satisfied that Defendants purposefully directed their conduct or activities to Pennsylvania. Mold Medics has provided several examples to show that Defendants purposefully availed themselves of the protections afforded by Pennsylvania's laws. Those circumstances include: (1) AARC maintains a home improvement contractor's license in Pennsylvania and advertises that it is "Licensed in Connecticut, New Jersey, New York, & Pennsylvania" (ECF No. 32, p. 7); (2) "AARC regularly enters into contracts with Pennsylvania residents for provision of services to those residents throughout Pennsylvania", and since November 2020, "AARC received $293,674.18 from these services"; (3) "Defendants admit to contacting and communicating with at least 58 prospects in Pennsylvania since November 19, 2020," and "[a]t least 15 of these prospects relate to homes within the Western District of Pennsylvania," and (4) "on at least one occasion, Defendants shipped products ordered from the Infringing Domain into Pennsylvania." (ECF No. 32, pp. 7-8).

As a threshold matter, a district court cannot exercise personal jurisdiction over a defendant that has not "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A defendant's contacts with the proposed forum "must be [its] own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (2014)). In this vein, a defendant must have "deliberately

'reach[ed] out beyond' its home—by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden*, 571 U.S. at 285).

At the outset, it is of no consequence that Defendants have no offices, property, or bank accounts in Pennsylvania, and it does not matter that Defendants did not physically visit Pennsylvania. This is so because, "[w]hen a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Remick v. Manfredy*, 238 F.3d 248, 257 (3d Cir. 2001) (quoting *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1225 (3d Cir. 1992)). *See also Farino*, 960 F.2d at 1225 (quoting *Burger King*, 471 U.S. at 476) ("Defendants go on to list all the physical contacts that they do not have with Pennsylvania, e.g., no residence, no office, no bank accounts, no telephone listing, no property in the Commonwealth. While it may be true that the defendants have no physical connection with the forum, that is not dispositive. When a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'").

"'[W]hat is necessary is a deliberate targeting of the forum,' ... so efforts 'to exploit a national market' that 'necessarily included Pennsylvania' are insufficient." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *O'Connor*, 496 F.3d at 317 and *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009). "'[T]he mere operation of a commercially interactive website' does not confer jurisdiction wherever that website may be accessed." *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 470 (D.N.J. 2021) (quoting *Toys "R" Us*, 318 F. 3d at 454). "Rather, there must be evidence that the

defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via his web site, or through sufficient other related contacts." *Toys "R" Us.*, 318 F. 3d at 454.  In other words, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Under this sliding scale, the Court must "examine 'the level of interactivity and commercial nature of the exchange of information that occurs on the website'" and determine whether such activity established sufficient minimum contacts to confer jurisdiction.  *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211-12 (3d Cir. 2014) (quoting *Zippo*, 952 F. Supp. at 1124).

Here, AARC's website is not merely informational.  When a person requests information through the website and provides their address, AARC will send a proposal.  (ECF No. 40-2, p. 6); (ECF No. 40-3, p. 8).  It has a home improvement license in Pennsylvania, and it advertises on its website that it is licensed in Pennsylvania.  AARC is adamant that it has not performed any services in the Western District of Pennsylvania.  (ECF No. 40, p. 4).  But, it has conceded that it has contacted and communicated with at least 58 prospects in Pennsylvania since November 19, 2020.  (ECF No. 36-20).  At least fifteen of these prospects have homes located in the Western District of Pennsylvania.  (ECF No. 36-20).  Furthermore, AARC produced through jurisdictional discovery at least ten proposals and three contracts for services to be provided at addresses in Pennsylvania.  (ECF No. 47-1).  And, since July 18, 2018, AARC has received $293,674.18 from "services" it performed in Pennsylvania.  (ECF No. 40-2, pp. 9-10).

The difficulty with the record before the Court is that while advertising about being licensed and able to do work in Pennsylvania and having internet contact with 58 Pennsylvanians

may not necessarily be sufficient, AARC has admitted that it has received $293,674.18 from "services" it performed in Pennsylvania.  (ECF No. 40-2, pp. 9-10).  The Court is somewhat confused about what "services" AARC performed, but it does not seem to be the case that all of this revenue was simply generated through website consultations.  Nevertheless, at this point, the Court finds that the record viewed in its entirety reflects that AARC has reached out beyond its home state of New Jersey to solicit and create some business relationship with Pennsylvania residents as to its services for mold remediation, flood and fire damage, cleanup, basement waterproofing and yard drainage.  *See Remick*, 238 F.3d at 257 (quoting *Farino*, 960 F.2d at 1222) ("jurisdiction is proper where parties 'reach out beyond one state and create continuing relationships and obligations with citizens of another state.'").  These contacts were purposeful and are sufficient to confirm personal jurisdiction over AARC.

As to Rubino, he is the President of AARC.  He has been domiciled in Florida since 2020, and he argues that that he does not have any personal assets, business assets, property, or agents in Pennsylvania.  He claims his online and social media presence simply make information available about him and the work he does.  (ECF No. 15-1).  Based on the Court's review of the facts, they sufficiently allege that Rubino personally carried out a substantial part of the allegedly infringing conduct at issue.

In January of 2021, Rubino created a website, *www.themoldmedic.com*; a Facebook page, *@themoldmedic*; an Instagram handle, themoldmedic; and, a Twitter handle, @themoldmedic.  (ECF No. 5-1); (ECF No. 36-12); (ECF No. 40-4, p. 10).  On Rubino's website, it referred to him as, "The Mold Medic," and stated he was an authority on mold remediation and the President of AARC.  His qualifications were cited, and readers were directed to *AllAmericanResoration.com* or *Michael@allamericanrestoration.com* to reach him.  (ECF No. 36-12).  Rubino's role in the

corporate structure (president), and the extent and nature of his participation in the alleged tortious conduct through his online activity, and the way that activity tied into AARC, leads this Court to conclude that it can exercise personal jurisdiction over him in his individual capacity.  It is of particular import to the Court that requests for consultations with Rubino from his website are sent directly from the email addresses *noreply@themoldmedic.com* to *leads@allamericanrestoration.com*, and the same is true for his Instagram account.  (ECF No. 32, pp. 10-11).  Rubino's book directed readers to contact him as follows, "If you ever have any question about mold, feel free to email me at *Michael@AllAmericanRestoration.com* or visit our website at *www.AllAmericanRestoration.com*," and ten of thirteen testimonials in the book refer to AARC.  (ECF No. 32, p. 5).

As to the websites of Rubino and AARC, in mid-August, on AARC's website, it launched a segment, "Mold Talks with The Mold Medic:  Michael Rubino."  (ECF Nos. 36-13 and 36-14).  Two months later, the same segment appeared on Rubino's website, *www.themoldmedic.com.*  (ECF No. 36-15).  Now, the content on the two webpages is the same.  (ECF No. 32, p. 7); (ECF Nos. 36-15 and 36-16).

Since July 2018, a total of 364 people have filled out a form on *themoldmedic.com* (Rubino's website) to inquire about a consultation.  (ECF No. 40-3, p. 19); (ECF No. 40-4, p. 8).  Mold Medics contends that "Defendants did not, in jurisdictional discovery, accurately disclose which of their Pennsylvania prospects and customers came from Rubino through the Infringing Domain," and it points to three Pennsylvanians who submitted a consultation request through Rubino's website and information then came from AARC.  (ECF No. 32, p. 11).

Based on the evidence adduced about the unique interplay and relationship between Rubino and AARC, the Court finds sufficient evidence exists that Rubino also reached out

beyond his home state of Florida (and his role as the President of AARC, which is domiciled in New Jersey) to solicit and create some business relationship with Pennsylvania residents.

## 2.   Arise Out of or Relate to

Even though Mold Medics has established that Defendants purposefully availed themselves of the privileges of conducting business in Pennsylvania, personal jurisdiction is not automatically conferred "because the defendant is not 'at home'—[and] the forum State may exercise jurisdiction in only certain cases." *Ford Motor Co.*, 141 S. Ct. at 1025.  To that end, a plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum state. *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780).  Prior to the Supreme Court's pronouncements in *Ford Motor Co.*, the "arose out of or relate to" inquiry depended, in part, on the types of claims brought: contract claims are examined under a "restrictive standard" that requires a defendant's forum contacts to be instrumental in formation or breach, while tort claims require a less restrictive standard that requires a defendant to have "benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) (quoting *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)) (citations omitted).  Both tests require something more than but-for causation, and intentional torts require a bit more: "'[a] defendant [must have] expressly aimed [its] tortious conduct at the forum' to make the forum 'the focal point of the tortious activity.'"  *Id.* (quoting *IMO Industries, Inc. v. Kiekert AG*, 265–66 (3d Cir. 1998)).

Then, in *Ford Motor Co.*, the Supreme Court expressly provided that specific personal jurisdiction does not always require "proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 141 S. Ct. at 1026

(citing *Bristol-Myers*, 137 S. Ct. at 1779–81). This is simply because while "the first half of [the] standard asks about causation[,] . . . the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id. See also id.* at 1033 (Alito, J., concurring) ("Ford . . . asks us to adopt an unprecedented rule under which a defendant's contacts with the forum State must be proven to have been a but-for cause of the tort plaintiff's injury. The Court properly rejects that argument, and I agree with the main thrust of the Court's opinion."); *id.* at 1034 (Gorsuch, J., concurring) ("The majority admits that 'arise out of' may connote causation. But, it argues, 'relate to' is an independent clause that does not."). The Court nevertheless cautioned that the current formulation "does not mean anything goes[,]" and it "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* What these limits are is left to the imagination because the Court does not define or offer any limiting principles. *Id.* at 1035 (Gorsuch, J., concurring) ("the majority offers no meaningful guidance about what kind or how much of an 'affiliation' will suffice. Nor . . . does the majority tell us whether its new affiliation test supplants or merely supplements the old causation inquiry.").

Due to the Supreme Court's recent decision in *Ford Motor Co.*, it is apparent that the Third Circuit's causation-focused relatedness test—one that "requires a closer and more direct causal connection than that provided by the but-for test[]"—*O'Connor*, 496 F.3d at 323, is not the only method for a plaintiff to show that its claims share a sufficient relationship with the defendant's purposeful contacts with the forum. At the same time, however, the Third Circuit has impliedly recognized the same because the Court has not categorically adopted a bright-line test, and courts are still required to examine the existence or absence of personal jurisdiction in each case on an individual basis. *Id.* at 323. Regardless of what may or may not suffice to show

that a plaintiff's claims "relate to" the defendant's in forum contacts, it remains true—and as the Supreme Court recognized—that "[t]he first half of [the] standard asks about causation . . . ." *Ford Motor Co.*, 141 S. Ct. at 1026. *See also id.* at 1026 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum."); *Id.* at 1033 (Alito, J., concurring) ("because this phrase is cast in the disjunctive, the Court recognizes a new category of cases in which personal jurisdiction is permitted . . . ."); *Id.* at 1034 (Gorsuch, J., concurring) ("the majority zeros in on the disjunctive conjunction 'or,' and proceeds to build its entire opinion around that linguistic feature.").

Accordingly, the Court will apply the Third Circuit's causation-focused test set forth above because the Supreme Court did not expressly or impliedly overrule that test, but instead, simply highlighted that there are two methods of showing a sufficient connection between a plaintiff's claims and the defendant's contacts with the forum. Under that test, the Court finds that Mold Medics' claims arise out of Defendants' purposeful contacts with the forum. Defendants have expressly aimed their tortious conduct at Pennsylvania, where Mold Medics resides, to make it a focal point of the tortious activity. Plaintiffs allege trademark infringement and improper use by Defendants of the Mark in the operation of their business. Defendants continue to use the Mark, and as noted above, they contacted and communicated with Pennsylvania residents using the Mark. Products were sold through their websites and delivered to Pennsylvania. AARC has contacted and communicated with at least 58 prospects in Pennsylvania since November 19, 2020. (ECF No. 36-19). Further, Mold Medics has established through jurisdictional discovery that at least eight "prospects and customers" "came

directly by use of the Mold Medic mark and brand since June 2021, at least three of which were also prospects of Mold Medics." (ECF No. 32, p. 14). AARC has received $293,674.18 from services it performed in Pennsylvania since July 18, 2018. (ECF No. 40-2, pp. 9-10). Mold Medics' claims for infringing use can certainly be said to arise from and relate to Defendants' use of the Mark in its business in Pennsylvania.

### 3. Fair Play and Substantial Justice

Because Mold Medics has satisfied its burden of showing that Defendants purposefully availed themselves of the privileges of doing business in Pennsylvania and Mold Medics' claims arise out of those purposeful contacts, the Court must consider "whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 324. (quoting *Int'l Shoe*, 326 U.S. at 316). In this endeavor, there exists a presumption of constitutionality where a plaintiff has shown the required minimum contacts, and a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 477) (internal quotation marks omitted). *See also id.* (citing *Pennzoil Prods. Co. v. Colelli Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998)) ("if minimum contacts are present, then jurisdiction will be unreasonable only in 'rare cases'). Mere statements that exercising jurisdiction would be unfair, without more, are insufficient. *See Pennzoil Prods. Co.*, 149 F.3d at 208 ("Indeed, [Defendant] itself does not even explain with any specificity how exercising jurisdiction would offend notions of 'fair play and substantial justice.' No claims of exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests have been made. Instead, [Defendant] merely argues that any exercise of jurisdiction without minimum contacts cannot comply with notions of 'fair play and substantial justice.'

However, since we conclude that minimum contacts are present in this case, we reject this argument [and] conclude that exercising jurisdiction would be in accord with notions of 'fair play and substantial justice.'")

Defendants argue that litigation in New Jersey would be more convenient and efficient for them, but its "burden is lessened by the geographic proximity of the two neighboring states." *Neopart Transit, LLC v. Management Consulting, Inc.,* 2017 WL 714043, at *7 (E.D. Pa. Fed., 23, 2017) (citing *O'Connor*, 496 F.3d at 324). The Court finds that the exercise of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

### 4. Conclusion

Mold Medics has sufficiently furnished factual circumstances establishing a *prima facie* case of personal jurisdiction over Defendants. Defendants purposefully availed themselves of the privileges of doing business in Pennsylvania, Mold Medics' claims arise out of those purposeful contacts, and the exercise of specific personal jurisdiction is consistent with traditional notions of fair play and substantial justice. Defendants motion under Rule 12(b)(2) will be denied.

### B. The Rule 12(b)(3) motion will be denied.

Relying on 28 U.S.C. § 1391(b) and § 1404(a), Defendants contend that the Court should transfer the case to the District of New Jersey. Mold Medics counters that the Court has personal jurisdiction over Defendants and, therefore, venue is proper in the Western District of Pennsylvania ("Western District"), and it matters not that this forum is not convenient for Defendants.

### 1. Venue is proper in the Western District of Pennsylvania under § 1391(b).

20

The Court begins with determining whether venue would be proper in the Western District. The propriety of venue is generally governed by § 1391(b), which provides that a civil action may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

The Court concurs with Mold Medics that venue is proper in the Western District pursuant to § 1391(b)(2) because a substantial part of the events giving rise to their claims occurred within this district. Mold Medics has adduced evidence that Defendants made contact with at least fifteen prospects and customers in this district since March 2021, and at least five of the contacts came through the Infringing Domain. (ECF No. 32, p. 17). Second, venue is also appropriate under § 1391(b)(3) in the Western District because the Court has personal jurisdiction over Defendants.

### 2. The Court will not transfer the case pursuant to § 1404(a).

A party may move to transfer a civil action pursuant to § 1404, which provides in relevant part as follows: "[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Generally, "'[t]he burden of establishing the need for transfer ... rests with the movant,' and 'in ruling on defendants' motion the plaintiffs choice of venue should not be lightly disturbed.'" *Steinmetz v. McGraw-Hill Glob. Educ. Holdings*, LLC, 220 F. Supp. 3d 596, 600

(E.D. Pa. 2016) (quoting *Jumara*, 55 F.3d at 879).   "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quotation and citation omitted).

As already noted, venue is proper in this district.  It is similarly proper in the District of New Jersey because AARC resides there, and Rubino (the President of AARC) has consented to litigating in that district.  (ECF No. 15, p. 22).  The Court's discretion is broad in deciding whether to transfer. *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 458–59 (E.D. Pa. 2013).  In determining whether to transfer a case pursuant to Section 1404(a), there "is no definitive formula or list of the factors to consider."  *Jumara*, 55 F.3d at 879.  The Third Circuit has delineated several private and public factors that courts must balance when determining whether to transfer a case under the discretionary transfer statute. *Id.* at 883.  The private factors include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  *Id.* at 879.  Moreover, the Court must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive" for the parties. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013).  The public factors include (1) the enforceability of the judgment; (2) the relative administrative difficulty in the two fora resulting from court congestion; (3) the local interest in deciding local controversies at home; (4) the public policies of the fora; and (5) the familiarity of the trial judge with the

applicable state law in diversity cases. *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Jumara*, 55 F.3d at 879–80).

As to the private factors, Mold Medics filed this lawsuit in this district where it resides, and it is its choice of forum. Defendants' forum choice is the District of New Jersey. Their forum choice is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted).

Next, as to where the claims arose, the claims arise from Defendants' use of the Mark both inside and outside of Pennsylvania. Mold Medics adduced evidence in discovery that Defendants' use in Pennsylvania was not insubstantial. Furthermore, in their Counterclaim and Cross-claim, Defendants allege that actions of Mold Medics and Tim Swackhammer in this district caused harm. (ECF No. 41). Defendants have not identified any similarly-relevant use of the Mark that occurred in New Jersey, but the Court is aware that AARC is licensed in New Jersey. Accordingly, this factor weighs against transfer.

The convenience of the parties and witnesses weighs against transfer. Defendants have contended that its witnesses are located in New Jersey, but the majority of Mold Medics' witnesses are located in Pennsylvania. New Jersey is a neighboring state to Pennsylvania, and it is a short travel distance. Defendants do not allege that they or their witnesses would be inhibited from travel due to a physical or financial condition.

The final private factor is the location of books and records. Defendants' books and records are located in New Jersey, and Mold Medics' books and records are located in Pennsylvania. The Court gives this factor little weight "as technological advances 'have shortened the time it takes to transfer information, reduced the bulk or size of documents or

things on which information is recorded ... and have lowered the cost of moving that information from one place to another.'" *Papbst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 443 (D. Del. 2015) (quoting *Cypress Semiconductor Corp. v. Integrated Circuit Sys.*, Inc., No. 01-199, 2001 WL 1617186, at *3 (D. Del. 2015)).   Defendants do not attempt to show that their books and records could not easily be produced electronically in Pennsylvania for trial.

As to the public interest factors, factors numbers four and five have minimal bearing on the Court's analysis.  The first two counts in this case have been brought under federal law to enforce federal interest.  State laws and policies have no weight in these matters.  However, there are also some common law claims at Count III, which the parties seemingly agree would implicate Pennsylvania law.  (*compare* ECF No. 32, p. 18 *to* ECF No. 15, p. 23).  The Court is more familiar with Pennsylvania law than a court in the District of New Jersey, and this district has an interest in protecting the intellectual property rights of its residents and businesses.  Likewise, factor one does not weigh heavily in the analysis.  Defendants are citizens of the United States. Therefore, a judgment entered against them in any federal court will be enforceable.

Under public factors two and three, the Court must consider the practical considerations that could make the trial easy, expeditious, or inexpensive, as well as considerations of administrative difficulty resulting from court congestion.  On these points, Defendants do not suggest why the District of New Jersey would be a better forum.  By contrast, this district is well equipped to handle this litigation.  This case has been pending before the Court since December of 2021, during which the Court has entered multiple scheduling orders and held a telephone conference on a discovery dispute.  Defendants have recently filed a counterclaim against Mold

Medics as to events that allegedly occurred in this district.  (ECF No. 41).  There is no sound basis to require a judge in the District of New Jersey to become familiarized with these proceedings.

For these reasons, the Court holds that Defendants have failed to meet their burden of establishing that a transfer is warranted under § 1404(a).

### 3.  Conclusion

The Court will deny Defendants' motion to transfer.   At its heart, Defendants' motion is nothing more than an effort to litigate in the forum they would prefer.

### C.  The Rule 12(b)(6) motion will be denied.

Congress enacted the Lanham Act in 1946 in order to provide a national protection for trademarks used in interstate and foreign commerce." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985).  The Lanham Act, 15 U.S.C. § 1051, *et seq.*, "was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in ... commerce against unfair competition.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127).  Specifically, the Lanham Act provides that:

> Any person who shall, without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant ....

15 U.S.C. § 1114(1).

The Court finds that Mold Medics has plainly stated a claim of trademark infringement at Count I.  To state a claim for trademark infringement, a plaintiff must allege three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc.*

*v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  The first two elements do not

seem to be disputed by Defendants.  Mold Medics has clearly pled that it owns the Mark at issue

(MOLD MEDICS) and registered the Mark on the principal trademark register of the USPTO on

October 15, 2019.  (ECF No. 1, p. 2).  It uses the Mark in the operation of its business providing

services, products, and solutions for mold remediation and other air quality and environmental

issues.  (*Id.* at p. 2).  The Mark is also used under a license agreement with its affiliate for

marketing, sale, management and operation of the franchise system for its businesses.  Mold

Medics uses the domain name, *www.moldmedics.com*.  (*Id.*).

The third element, "a likelihood of confusion," exists where "consumers viewing the

mark would probably assume that the product or service it represents is associated with the

source of a different product or service identified by a similar mark."  *E.A. Sween Co., Inc. v.

Deli Exp. of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) (citation and quotation

omitted).  "The single most important factor in determining likelihood of confusion is mark

similarity."  *A & H Sportswear*, 237 F.3d at 216.  Courts in this circuit evaluate likelihood of

confusion through a non-exhaustive list of ten factors,[5] called the *Lapp*[6] factors.  "None of these

factors is determinative in the likelihood of confusion analysis and each factor must be weighed

---

[5] The factors are: (1) the degree of similarity between the owner's mark and the alleged
infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors
indicative of the care and attention expected of consumers when making a purchase; (4) the
length of time the defendant has used the mark without evidence of actual confusion arising; (5)
the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7)
whether the goods, competing or not competing, are marketed through the same channels of
trade and advertised through the same media; (8) the extent to which the targets of the parties'
sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether
because of the near-identity of the products, the similarity of function, or other factors; and (10)
other facts suggesting that the consuming public might expect the prior owner to manufacture
both products, or expect the prior owner to manufacture a product in the defendant's market, or
expect that the prior owner is likely to expand into the defendant's market.  *Kos Pharms., Inc. v.
Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004) (quoting *A&H Sportswear*, 237 F.3d at 215).

[6] *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir.1983).

and balanced one against the other." *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001).

Neither of the parties urge the Court to undertake a rigorous analysis of the *Lapp* factors to determine whether or not a likelihood of confusion exists. The Court will not do so because the "question of likelihood of confusion is ultimately one of fact." *A&H Sportswear, Inc.*, 237 F.3d at 237. Mold Medics sufficiently contends that Defendants' websites and advertisements (and book) use the same Mark, which is likely to cause customer confusion. *See U.S. Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) ("there is great likelihood of confusion when an infringer uses the exact trademark"); *Opticians Ass'n of America v. Independent Opticians of American*, 920 F.2d 187, 195 (3d Cir. 1990) (finding "likelihood of confusion ... inevitable, when ... the identical mark is used concurrently"). Discovery will reveal whether Mold Medics can produce evidence of a likelihood of confusion of customers.

As to Count II, the Court finds that Mold Medics has plainly stated a claim of unfair competition under the Lanham Act. Section 15 U.S.C. § 1125(a) sets forth two distinct bases of liability – false association and false advertising. Section 1125(a)(1)(A) prohibits "false or misleading" claims that are "likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]" Claims made under it are often called "false designation of origin" or "false association" claims. To establish such a claim, the owner of an unregistered mark "has the burden ... of proving the existence of a protectable mark." *E.T. Browne Drug Co. v. Cococare Prod., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008). Another portion of the statute, subsection (a)(1)(B), forbids "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services,

or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B). Claims under this provision are called "false advertising" claims. *See Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 225-26 (3d Cir. 2017).

Mold Medics is advancing a claim for false association. (ECF No. 1, pp. 5-6); (ECF No. 32, pp. 16-17). To state a claim for false association under § 1125(a)(1)(A), "a plaintiff must show that: (1) its mark is legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services."[7] *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008).

Mold Medics has set forth allegations, that if later proven to be true, support a claim for false association. As set forth above in the Court's analysis of the trademark infringement claim, Mold Medics has clearly pled that it owns the Mark and registered the Mark. There is no question that Mold Medics has alleged that Defendants have utilized their Mark without their authorization. At this stage of the litigation, Mold Medics need not prove confusion was actually created; rather, it is entitled to obtain discovery in support of this claim.

Lastly, as to Count III–Mold Medics' claims of common law trademark infringement and unfair competition–it also survives Defendants' motion to dismiss for the same reasons set forth previously herein. The test for common law infringement and unfair competition is identical to

---

[7] The Third Circuit considers eight factors in analyzing this prong of a false association claim: (1) the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion (and the length of time the defendant employed the allegedly infringing work before evidence of actual confusion arose); (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the plaintiff; and (8) likelihood of expansion of the product lines." *Facenda*, 542 F.3d at 1020.

the test set forth for federal infringement and unfair competition. *World Wrestling Fed'n Entertainment, Inc. v. Big Dog Holdings, Ind.*, 280 F.Supp. 2d 413, 446 (W.D. Pa. 2003).

Defendants' Rule 12(b)(6) motion will be denied.

## IV. CONCLUSION

For the foregoing reasons of law and fact, by Order of Court to follow, the Court will deny Defendants' Motion to Dismiss or Transfer (ECF No. 14).

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

9-1-22
Date