IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MOLD MEDICS LLC,

          *Plaintiff*,

v.

ALL AMERICAN RESTORATION CORP.
and MICHAEL RUBINO,

          *Defendants*.

Civil Action No. 2:21-cv-1851

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

Plaintiff Mold Medics LLC ("Mold Medics") commenced this trademark infringement lawsuit against Defendants All American Restoration Corp. ("AARC") and Michael Rubino ("Rubino") (collectively, "Defendants") on December 22, 2021. (ECF No. 1). Count I of Mold Medics's Complaint is a claim for "Federal Trademark Infringement Under § 32(1) of the Lanham Act (15 U.S.C. § 1141(1))," Count II is a claim for "Unfair Competition Under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a))," and Count III is a claim for "Common Law Trademark Infringement and Unfair Competition." (ECF No. 1, pp. 4-6).

On May 28, 2022, Rubino filed a Counter-Claim against Mold Medics and a Third-Party Complaint against Tim Swackhammer ("Swackhammer"). (ECF No. 23). On July 21, 2022, Rubino filed a First Amended Counterclaim against Mold Medics and a First Amended Third-Party Complaint against Swackhammer. (ECF No. 41). Count I is a claim for "Intentional Interference with Prospective Contractual Relations," and Count II is a claim for "Unfair Competition under 18 U.S.C. § 1125." Both claims are against Mold Medics and

1

Swackhammer. (*Id*. at pp. 11-16). Count III is a claim for "Declaratory Judgment of Non-infringement," Count IV is a claim for "Cancelation of Reg. No. 5,886,631 Pursuant to 15 U.S.C. § 1119," and Count V is a claim for "Declaratory Judgment of No Trademark Rights." Each of these counts are against Mold Medics. (*Id*. at pp. 18-22).

Mold Medics and Swackhammer filed a Motion to Dismiss Rubino's First Amended Counterclaim against Mold Medics and a First Amended Third-Party Complaint against Swackhammer. (ECF No. 43). The motion will be granted in part and denied in part.

## I. STANDARD OF REVIEW

A motion to dismiss filed under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the complaint, or counterclaim. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint or counterclaim to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's or counterclaim's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550

U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's and counterclaim's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint and counterclaim must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II.  FACTUAL BACKGROUND

The facts set forth by Mold Medics and adduced during the jurisdictional discovery were set forth by the Court in its September 1, 2022 Memorandum Opinion (ECF No. 49), and they are hereby incorporated herein. The Court supplements those facts with the following facts set forth by Rubino in his First Amended Counterclaim and First Amended Third-Party Complaint.

Rubino submits that he has "priority use of 'The Mold Medic,' predating September 21, 2018, particularly in connection with education and consulting services related to mold and indoor environmental health, which are the services to which his social media accounts and personal business interests are directed." (ECF No. 41, pp. 9-10). Rubino "maintains his own personal business endeavors separate and distinct from AARC," and he is a "widely known expert in environmental toxins and has many speaking and other public engagements on the topic, including appearing on podcasts with celebrities and other notable personalities in the field." (*Id.* at p. 4). Since 2021, Rubino has hosted "Mold Talks," a podcast and he "has appeared on dozens of third-party podcasts discussing mold contamination and environment health." (*Id.* at pp. 4-5). He promotes "his book, his personal brand, his business partnerships, and his overall knowledge in the field of mold and environmental toxin consulting through his social media platforms, including Instagram, Facebook, LinkedIn, and Twitter, in addition to his

3

website *www.themoldmedic.com*." (*Id*. at p. 5). According to Rubino, he has used the term "The Mold Medic" since "at least June 2014." (*Id*.).

When Rubino's book was published in 2020, he changed his Instagram handle to "@themoldmedic to promote his persona as 'The Mold Medic' and to promote services and products." (*Id*. at p. 6). Rubino has approximately 28,000 Instagram followers. (*Id*.). His Instagram account generates more than one hundred thousand dollars in revenue annually, based on client and business partner engagements, publicity, and events and appearances. (*Id*.). Also in 2020, he created a Facebook page "to promote his book, his brand and to provide customers with various products and services." (*Id*.). Rubino claims that he "uses both platforms to promote his brand and offer a wide range of products and services to consumers, most notably his expertise in general home and environmental health consulting," and that he does "not use these platforms to offer traditional mold remediation or air duct cleaning services." (*Id*.).

After Mold Medics filed this lawsuit, Mold Medics, through Swackhammer, petitioned social media platforms to remove Rubino's posts and/or accounts due to the alleged infringement. (*Id*. at p. 8). As a result, Rubino's Instagram and Facebook accounts were disabled in May 2022. (*Id*. at pp. 7-8). Rubino convinced Instagram to reinstate his account. During the time of deactivation, he contends that he was "deprived" of contact with his customer base, and his business partners were "confused." (*Id*. at p. 9).

On May 3, 2022, Mold Medics filed a new trademark application (serial no. 97393518) for the mark "Mold Medics" for "education services, namely, providing publications, articles, blogs, videos, podcasts, resources and educational content in the field of air quality, environmental quality, environmental toxins, mold, radon, disinfection, functional medicine, and

4

related topics" in International Class 41, based on a date of first use in commerce of September 21, 2018. (*Id*. at p. 10).

### III. ANALYSIS

**A. Count I will be dismissed.**

Count I, entitled "Intentional Interference with Prospective Contractual Relations," is brought by Rubino and it alleges that Mold Medics and Swackhammer "intentionally and unjustifiably interfered" with his "advantageous business relationships by unilaterally contacting Instagram and Facebook and causing those platforms to disable his access to each, thus severing his relationships with his followers and customers." (ECF No. 41, p. 11). Rubino has represented that his "Facebook and Instagram pages were disabled for several weeks, interfering with and delaying Rubino's messaging to his actual and prospective clients and business partners," and that this "caused a loss of revenue," "delayed his announcement and promotion of services," and restrained his "trade and customer access to information." (*Id*. at pp. 13-14). It is unclear whether Rubino is advancing a tortious interference with contract claim, or a claim for tortious interference with prospective contractual relations. These are similar, yet distinct, torts. Regardless, Rubino's claim is insufficiently pled and it will be dismissed.

Pennsylvania courts "separate those instances in which there has been an alleged interference with an existing contract right from instances in which the interference is charged with affecting prospective contractual relations." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 470 (Pa. 1979). Tortious interference with contract "is concerned only with intentional interference with subsisting contracts," whereas tortious interference with prospective contractual relations concerns interference with "relations not yet reduced to contract." Restatement (Second) of Torts § 766 cmt. a; *see also Advanced Power Sys., Inc. v. Hi-Tech Sys.,*

*Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa. 1992) ("If it were true ... that the cancellation of an *existing* contract can provide the basis of a claim of tortious interference with *prospective* relations, there would be little basis for distinguishing between the tort [of intentional interference with contract] and the tort [of intentional interference with prospective contractual relations]." (emphasis in original)). Nevertheless, the legal standards overlap in that to set forth a legally sufficient cause of action for intentional interference with contractual or prospective contractual relations, four elements must be pled:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*See Thompson Coal Co.*, 412 A.2d at 471; *Birl v. Philadelphia Electric Co.*, 167 A.2d 472, 474 (Pa. 1960). The Pennsylvania Supreme Court has explained that the term "prospective contractual relationship," "is something less than a contractual right, something more than mere hope." *Thompson Coal Co.*, 412 A.2d at 471. The Court notes that district courts have struggled with the lack of clear standards as to what a plaintiff must allege to satisfy their pleading obligations under *Twombly* and *Iqbal*.

Here, the first element of a tortious interference with prospective contractual relations claim is insufficiently pled. Rubino's failure to identify a potential contractual partner by name does not, alone, warrant dismissal of his claim. However, his Amended Complaint fails to offer any specific allegations about the universe of prospective contractual partners. Nothing is pled regarding what relationships Rubino sought to pursue or with whom, and there are no allegations explaining exactly what business Rubino was pursing through his Instagram and Facebook pages. Similarly, if Rubino's claim is that Mold Medics and Swackhammer interfered with some

6

contractual relationship he had with his 28,000 Instagram followers, his Amended Compliant is devoid of the particulars regarding what contractual relationship he had with them. Rubino's Amended Complaint is short on details. He may not proceed on speculation or surmise. Therefore, since his allegations are insufficient to plead a plausible claim for tortious interference, Count I will be dismissed.

**B. Count II will be dismissed.**

Count II is a claim of Unfair Competition under 15 U.S.C. § 1125 against Mold Medics and Swackhammer. (ECF No. 41, pp. 14-17). To prove this form of a Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *See Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000). The plaintiff bears the burden of proof. *See Am. Home Prods. Corp. v. Barr Labs., Inc.*, 834 F.2d 368, 371 (3d Cir.1987).

It is undisputed that Rubino does not own a mark. If anything, the record developed through jurisdictional discovery and those matters of public record, including the trademark applications, has revealed that Mold Medics owns the mark "MOLD MEDICS" ("Mark") and registered the Mark on the principal trademark register of the United States Patent and Trademark Office ("USPTO") at USPTO Registration No. 5,886,631 on October 15, 2019.[1]

---

[1] "A certificate of registration of a mark upon the principal register ... shall be *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142-43 (2015); *see also Com. Nat'l Ins. Servs., Inc.*, 214 F.3d at 438 ("If the mark at issue is federally registered and has become incontestable, then validity, legal protectability, and ownership are proved."). That said, "[i]f the mark has not been federally registered or, if registered, has not achieved incontestability, then "validity depends on proof of secondary meaning, unless the unregistered or contestable

(ECF No. 1, p. 2). On May 7, 2021, AARC filed an application to register the mark, "The Mold Medic," on the principal register of the United States Patent and Trademark Office seeking to register it in Class 40, mold remediation services. (ECF No. 5-1, p. 2). In so doing, AARC declared it was the owner of the mark, "The Mold Medic." (*Id.*). (ECF No. 5-1, pp. 36-45; ECF No. 55-2, pp. 1-11). The USPTO appears to have refused to register AARC's proposed mark. (ECF No. 55-2, pp. 12-16).

Rubino has not pled that he owns a mark upon which Mold Medics or Swackhammer infringed as he has not pled that he attempted to register a mark. What Rubino has alleged is that he has used the name "The Mold Medic" in various forms in connection with his mold remediation consulting and related services since "at least June 2014." (ECF No. 41, p. 5). In the Court's estimation, Rubino has not pled a claim for common law unfair competition. *See NLMK Pa., LLC v. United States Steel Corp.*, 2022 WL 840284, __F.Supp.3d__, **7—10 (W.D. Pa. March 22, 2022) (citing cases and discussing Pennsylvania's common law tort of unfair competition). He has set forth no allegations that Mold Medics's mark has not achieved incontestability.[2] He had to plead that he owns the mark. Not only has he failed to do so, but he cannot advance any plausible claim that he owned the mark given that prima facie evidence exists that Mold Medics owns the mark "MOLD MEDICS," and AARC's (not Rubino's)

---

mark is inherently distinctive." *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991).

[2] A mark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years subsequent to registration, that there is no pending proceeding contesting the owner's rights to registration, and that there has been no adverse decision concerning the registrant's ownership or right to registration. *See* 15 U.S.C. §§ 1058, 1065; *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 472 n. 7 (3d Cir. 1994).

application to register the mark, "The Mold Medic," was unsuccessful. Since Rubino failed to plead that he owns the mark, Count II will be dismissed.

The Court would further note that even if Rubino had pled that he owns the mark, he has not pled how Mold Medics's (and Swackhammer's) use of its registered Mark caused confusion with Rubino's use of "The Mold Medic" on his social media platforms and in his book. His claim is focused on the complaints Mold Medics and Swackhammer made to Facebook and Instagram about his use of their registered Mark, and how their aim was to diminish his promotional presence and deprive him of "the actual revenue that access to his social media following." (ECF No. 41, p. 17). The Court concurs with Mold Medics and Swackhammer that Count II "at best" "pleads substance unrelated to the § 1125 claim: that Counter-Defendants sought to suppress Rubino's social media pages so that Counter-Defendants' would have an easier time to self-promote their business." (ECF No. 44, p. 13). Rubino has failed to sufficiently plead a § 1125 claim. Count II will be dismissed.

### C. Counts III and IV will be dismissed.

"The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 ... provides that a court 'may declare the rights ... of any interested party,' 28 U.S.C. § 2201(a), and contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). The United States Court of Appeals for the Third Circuit provided four factors that district courts should consider in exercising their discretion regarding declaratory relief: "(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." *United States v. Pa. Dept. of Envtl.*

*Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991). However, if a party seeks declaratory relief that is redundant with claims already presented, courts may dismiss the claim which seeks declaratory relief for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Carlson v. Am. Mutual Ins. Co.*, Civil Action No. 17-4621, 2018 WL 10809978 , * 3 (E.D. Pa. Mar. 12, 2018) (citation omitted).

The declaratory relief sought by Rubino in Counts III and IV is the mirror image, or the inverse, of the relief already sought by Mold Medics in its Complaint. Mold Medics has alleged that Rubino and AARC infringed on its federally registered trademark, violated the Lanham Act by unfairly competing against it using a confusingly similar name, and violated common law trademark and unfair competition law. It has sought injunctive and declaratory relief. (ECF No. 1, p. 7; ECF No. 5). In Count III, Rubino seeks declaratory judgment "pursuant to 28 U.S.C. §§ 2201-02 that Rubino's use of 'The Mold Medic' does not infringe on any rights [Mold Medics] may have, nor does it constitute unfair competition under the Lanham Act or common law. This includes Rubino's use of 'The Mold Medic' in his book title and on social media and websites related to the book." (ECF No. 41, p. 20). In Count V, Rubino seeks "declaratory judgment" against Mold Medics because of his contention that Mold Medics "has no rights in 'Mold Medics' as a trademark with respect to education services." (*Id.* at p. 23). The issues presented in Rubino's claims for declaratory relief would necessarily be resolved by the adjudication of the claims in Mold Medics's Complaint and its request for injunctive and declaratory relief. Because the declaratory judgment Rubino requests is redundant, the Court grants that part of Mold Medics's and Swackhammer's motion which seeks to dismiss Counts III and V. This ruling is without prejudice to Rubino's right to raise the issues presented in Counts III and V at an injunction hearing, by motion in limine and/or at trial.

### D. Count IV can proceed.

In Count IV, Rubino seeks the cancellation of Mold Medics's registered Mark under 15 U.S.C. § 1119, which provides that "[i]n any action involving a registered mark the court may determine the right to registration, [or] order the cancelation of registrations, in whole or in part." 15 U.S.C. § 1119; *see also Ditri v. Coldwell Banker Residential Affiliates*, 954 F.2d 869, 873 (3d Cir. 1992) (explaining § 1119 gives federal courts concurrent authority with the USPTO to cancel a registered mark when the validity of the mark is challenged in a judicial proceeding). A petition to cancel the registration of a mark may be filed within five years from the date of the registration of the mark. *Id.* The party seeking cancelation bears the "burden to establish a prima facie case" and must show by a preponderance of the evidence that the trademark is invalid. *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009).

Rubino alleges that he was using the Mark approximately four years before it was registered by Mold Medics, and that Mold Medics has already pled that the marks are confusingly similar. (ECF No. 41, pp. 20-21). Viewed as a whole and in light of the entire record, the Court finds that Count IV sufficiently states a claim, although it is more of a prayer for relief. Count IV can proceed against Mold Medics, but the Court would caution Rubino that it may ultimately choose not to exercise its discretion to review this claim.

## IV. CONCLUSION

For the foregoing reasons of law and fact, the Court will grant the motion as to Counts I, II, III and V, and those claims will be dismissed with prejudice. The motion as to Count IV will be denied, and that claim can proceed against Mold Medics. Tim Swackhammer will be terminated as a party because no claims against him remain. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__10/6/2022_____
Date